SIGNED.

Dated: June 16, 2011

James M. Marlar, Chief Bankruptcy Judge

# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| AMADO BAUTISTA GUTANG AND ESPERANZA CASES GUTANG, | ) ) ) | No. 4:09-bk-31832-JMM |
| | ) | **MEMORANDUM DECISION** |
| Debtors. | ) | |

## **BACKGROUND**

The instant case, at least in the administrative phase, is still somewhat unsettled. This is due in part to Debtors' counsel's having been suspended from the practice of law for a two-year period. The court, in a different memorandum, will attempt to sort out any procedural aspects remaining in the main part of this Chapter 11 case.

Here, today, however, the court must decide a critical issue to the Debtors' reorganization effort, involving which of two creditors holds what priority in the pecking order of competing lien claimants. The answer to that question is also of significance to the two creditors involved.

The property for which they are competing is located at 4120 E. 4th St., Tucson, Arizona (the "Property"). Both creditors claim to be in first lien position on the Property. The parties have submitted that issue to the court for decision.

Briefs have been filed, arguments presented and the exhibits and applicable record perused.

# **FACTS**

The parties have presented the matter to the court on stipulated (or unopposed) facts. Thus, once the facts are stated, the court can proceed in summary fashion to decide the only issue before it--who has priority. The undisputed facts are:

1. On or about October 28, 2002, the property located at 4120 E. 4th Street, Tucson, Arizona ("Property") was encumbered by a first Deed of Trust in favor of Select Mortgage, Inc. (subsequently "SunTrust") in the original amount of $143,724.00.

2. A second Deed of Trust was recorded in favor of Bank One, N.A. (subsequently "Chase") in the original amount of $117,000. The Chase lien secured a revolving Home Equity Line of Credit ("HELOC"), and it was recorded July 27, 2004.

3. On or about September 29, 2006, the Debtors refinanced, and obtained two loans from Western Residential Mortgage, Inc. ("Western") in the amounts of $240,000 and $60,000, for a total of $300,000.

4. According to the requirements of Fidelity Title and Western, the proceeds of the Western loans were to be used to pay off both of the outstanding obligations of SunTrust and Chase.

5. The Specific Closing Instructions and Addendum to Closing Instructions associated with the first loan of $240,000 provided that the Chase loan was to be paid off and that Western's Deed of Trust was to be recorded in first lien position.

6. The Title Commitment required releases and reconveyances of both SunTrust's and Chase's Deeds of Trust.

7. The Western loan proceeds were disbursed to pay off the SunTrust mortgage ($135,371.37) and the Chase HELOC ($114,507.33) debts.

2

Case 4:09-bk-31832-BMW    Doc 123    Filed 06/16/11    Entered 06/17/11 08:12:31    Desc
Main Document - Chapter 11 Plan    Page 2 of 6

8. Thereafter, the Debtors again began borrowing on the Chase HELOC, and by the time the bankruptcy was filed, had accumulated a new balance to Chase of $121,426.18.

9. Through oversight, the Chase lien was not released and Western's first Deed of Trust was not recorded when Western's refinancing closed. At closing, Chase received $114,567.33 at closing, to bring its then balance to zero.

10. At some later time, Deutsche Bank acquired Western's loan documents on the Property.

11. The Debtors filed their Chapter 11 bankruptcy case on December 9, 2009.

12. The Debtors filed their proposed Chapter 11 Plan on April 2, 2010.

13. In the Chapter 11 Plan, the Debtors classify the claims relating to the Property as Class 2-F (Deutsche Bank), Class 2-G (Specialized Loan) and Class 2-H (Chase). The Debtors assert that Deutsche Bank is in first position, that Specialized Loan Servicing is in second position and that JPMorgan Chase is in third position. (Plan at pp. 15-18.) For reasons not clear here, Specialized Loan Servicing (if a creditor) has not participated in this dispute, nor filed a claim.

14. Deutsche Bank filed its Proof of Claim on February 22, 2010, alleging that it was a secured claim, with an amount owed it of $251,374.93 (Claim #9-1).

15. JPMorgan Chase Bank filed its Proof of Claim on January 27, 2010, alleging a secured claim $121,426.18 (Claim #8-1).

16. Deutsche Bank and JPMorgan Chase Bank each claim to be in first position.

17. The Property's fair market value is $200,000.

3

Case 4:09-bk-31832-BMW    Doc 123    Filed 06/16/11    Entered 06/17/11 08:12:31    Desc
Main Document - Chapter 11 Plan    Page 3 of 6

# ISSUE

Which lien creditor should be in first position on the Property at 4120 East 4th Avenue, Tucson, Arizona?

# DISCUSSION

Property rights, in a bankruptcy case, are determined by state law. Butner v. United States, 440 U.S. 48 (1979).

In their schedules, the Debtors listed the following liens in what they believed to be the order of priority:

| Lien Position | Creditor | Amount | Class (ECF 36) |
|---|---|---|---|
| 1 | Deutsche Bank (IndyMac) | $234,156 | 2-F |
| 2 | Specialized Loan Servicing | 58,421 | 2-G |
| 3 | Chase | 119,775 | 2-H |

(Amended Schedule D, ECF No. 6.) The Debtors' opinion of priority or rank is not binding on anyone.

As to Chase (Class 2-H), the Debtors' treatment was to strip Chase's lien (as wholly unsecured) and relegate it to the unsecured class.

As for Deutsche Bank (Class 2-F), the Debtors' plan limited its secured recovery to the value of the Property, $200,000, and proposed to "cram it down" at that value. The unsecured deficiency would become part of the unsecured class.

The Special Loan Servicing treatment was to be the same as Chase, i.e., fully unsecured (Class 2-G).

All parties agree that the value of the Property is $200,000.

4

Case 4:09-bk-31832-BMW    Doc 123    Filed 06/16/11    Entered 06/17/11 08:12:31    Desc
Main Document - Chapter 11 Plan    Page 4 of 6

**Equitable Subrogation**

Deutsche Bank maintains that its unrecorded lien should be entitled to first position, due to its having paid off the junior revolving lien of Chase, as that had been the intention of the parties, at the time the Debtors refinanced. At no time, argues Deutsche Bank, did its predecessor intend to lend $240,000 - $300,000 and then be relegated to a junior position behind Chase. This intention was commercial reality, as well as being expressed in the closing instructions to the title company (Fidelity). Deutsche Bank argues that Chase would receive an unfair windfall due to the failure to record Deutsche Bank's lien, which had neither been the intention nor understanding of the parties at the time of the refinancing.

Chase responds by simply pointing out that Deutsche Bank's mistake should redound to its benefit. This argument is made, even though Chase extended its original, revolving, home <u>equity</u> line of credit on the then-existing presumption that the Debtors' equity (above the amount of any then-existing senior liens) would remain sufficiently high to protect it from risk of loss.

Unfortunately, dramatic changes in the real estate market have changed that expectation.

Chase attempts to rely on ARIZ. REV. STAT. § 33-412, which grants protections to bona fide creditors or purchasers who take positions on realty without notice. But here, Chase cannot maintain that position, because it <u>had</u> notice, and was a party to, the payoff of its former debt with notice that the payor expected to be placed in first position. Chase, by participating in the very escrow by which it got paid (i.e., by furnishing its payoff figure of $114,567.33) did not bargain for a <u>superior</u> lien position. At the time, it was content with its original bargain, i.e., a junior lien on the Debtors' <u>equity</u>.

The court believes that the case cited by Deutsche Bank, <u>Lamb Excavation v. Chase Manhattan Mortgage Corp</u>., 208 Ariz. 478, 95 P.3d 542 (App. 2004), governs the outcome here. All of the legal elements set forth in that case apply to this dispute. Accordingly, an order will be entered which finds that the lien under Chase's HELOC should be equitably subrogated to Deutsche Bank's lien, to the extent of $249,938.70.

5

Case 4:09-bk-31832-BMW    Doc 123    Filed 06/16/11    Entered 06/17/11 08:12:31    Desc
Main Document - Chapter 11 Plan    Page 5 of 6

# **RULING**

Deutsche Bank's counsel is directed to lodge an appropriate form of final order within 14 days. Once entered, any party aggrieved by the decision has 14 days within which to appeal. FED. R. BANKR. P. 8002.

DATED AND SIGNED ABOVE.

COPIES to be sent by the BNC ("Bankruptcy Noticing Center") to:

Debtors
Nasser U. Abujbarah, Former Attorney for Debtors
Kim R. Lepore, Attorney for Deutsche Bank National Trust Company
Michael Chen, Attorney for JPMorgan Chase
Office of the U.S. Trustee